UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
UNITED STATES OF AMERICA,               :
                                        :
        -against-                       :   01 CR 619 (VM)
                                        :
FRANKLIN MINAYA, ALBERTO CASTELLANO,    :   **DECISION AND ORDER**
SILVIO GUERRERO, LEONARDO PINA,         :
REYNALDO PINA, PEDRO MORETA,            :
JULIO CESAR RODRIGUEZ, ANGEL OLIVERIA,  :
LUIS GOMEZ, BERNABE MARTINEZ,           :
HARIS JAVIER,                           :
                                        :
                    Defendants.         :
--------------------------------------X

**VICTOR MARRERO, United States District Judge.**

Four of the eleven defendants in this case have filed motions in anticipation of the trial of this action. Defendants Franklin Minaya ("Minaya"), Luis Gomez ("Gomez"), Haris Javier ("Javier"), and/or Bernabe Martinez ("Martinez") (together, the "Defendants") seek various forms of discovery, bills of particulars, severance, a hearing regarding the propriety of methods used to identify them as perpetrators of the alleged crimes, permission to join any and all motions made by co-defendants which are applicable and are not inconsistent with their own motions, and permission to make further motions as counsel may deem appropriate in the future.[1] For the reasons stated below, with the exception of

---

[1] Specifically, Minaya, Gomez and Javier have moved for the production of: (1) complete discovery pursuant to Federal Rule of Criminal Procedure 16 ("Rule 16"); (2) exculpatory information pursuant to Brady v. Maryland, 373 U.S. 83 (1963) ("Brady material"); and (3) all evidence of other crimes, wrongs or acts that the Government intends to use at trial pursuant to Federal Rules of Evidence 403 and 404. Minaya and Gomez have

the requests for permission to join in one another's motions and to make further motions and one component of Javier's request for a bill of particulars, all of these requests are denied.

## I. BACKGROUND

_____Minaya, Gomez, Javier, and Martinez were indicted along with seven other defendants on December 14, 2004. They are charged with participating in a racketeering enterprise known as the Freeman Street Robbery Organization (the "Organization"). The Organization allegedly perpetrated gunpoint home invasion robberies and related firearms and

---

also moved for (1) the disclosure of all hearsay statements that the Government intends to use at trial and all materials related to the impeachment of the declarants of those statements; (2) a list of witnesses the Government intends to call at trial; and (3) a list of all people interviewed in connection with the case and Grand Jury witnesses. Gomez and Javier have also moved for (1) bills of particulars pursuant to Federal Rule of Criminal Procedure 7; (2) disclosure of the identity of any confidential informants who have assisted in their arrest and prosecution; (3) the production of statements of witnesses the Government intends to call at trial which relate to the subject matter of the witnesses' testimony pursuant to 18 U.S.C. § 3500 ("§ 3500 material"); and (4) all material bearing on the credibility of Government witnesses pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972) ("<u>Giglio</u> material"). Javier has moved for the suppression of witness identification statements that were allegedly made in error and for the exclusion of evidence of other crimes. Minaya has moved for a hearing to determine the propriety of the methods used to identify him. Gomez, in his written submission to the Court, moved for leave to file a motion to suppress his identification upon the completion of discovery concerning the methods that were used to identify him. At the Court's most recent conference in this case, on August 5, 2005, Gomez orally moved for a suppression hearing. The Court denied Gomez's and Minaya's motions for such a hearing on the record at that conference. Finally, Gomez, Javier and Martinez have filed motions requesting that their trials be severed from the trial of their co-defendants.

In addition, Minaya has moved for suppression of certain post-arrest statements. The Court has scheduled a hearing on December 2, 2005 to address this matter and reserves judgment on this aspect of Minaya's motions until after the hearing.

narcotics   offenses   from   approximately   1996   through approximately 2001.   Minaya and Gomez are also charged with homicide.

## II. <u>DISCUSSION</u>

A.   <u>MOTIONS FOR DISCOVERY AND BILLS OF PARTICULARS</u>

The Defendants' motions for discovery and for bills of particulars are procedurally barred due to the Defendants' failure to comply with Local Criminal Rule 16.1 ("Local Rule 16.1").   Local Rule 16.1 provides that

> [n]o motion addressed to a bill of particulars or answers or to discovery and inspection shall be heard unless counsel for the moving party files with the court simultaneously with the filing of the moving papers an affidavit certifying that said counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the court and has been unable to reach such an agreement.

Local Crim. R. 16.1.

None of the Defendants has filed such an affidavit, nor is there any evidence before the Court that counsel for the Defendants have conferred with the Government or attempted to resolve the issues raised in the pending motions without the intervention of the Court.[2]   This failure constitutes a

---

[2] Counsel for Gomez, Michael H. Sporn, Esq., submitted an affirmation stating that he "made a generic request for discovery and particulars" and that "there has been no response [by the Government] to the specific defense requests."  (Affirmation of Michael H. Sporn, Esq. dated May 24, 2005 ¶ 4.)   The submission of discovery requests, even if they are specific, without additional efforts to address any perceived deficiencies in the Government's response does not satisfy the requirement of Local Rule 16.1 to "confer" with opposing counsel in an attempt to resolve the matter without the Court's intervention.   Counsel for Javier, Murray Richman, Esq., represents that he "attempted to informally receive" from

sufficient basis on which to deny the Defendants' motions for discovery and bills of particulars.  See, e.g., United States v. Ahmad, 992 F. Supp. 682, 684 (S.D.N.Y. 1998).

Even if the Defendants had complied with Local Rule 16.1, the Court would deny their motions on the merits.

1.  Discovery Requests

The instant motions seeking disclosure of Brady material, Giglio material, § 3500 material, material that the Government may seek to introduce under Federal Rule of Evidence 404(b) ("Rule 404(b)"), and a list of witnesses are denied for reasons set forth by the Court in its recent Decision and Order in United States v. Dames, 380 F. Supp. 2d 270, 272-73, 277 (S.D.N.Y. 2005).[3]  As the Court stated in Dames, should

---

the Government the information sought in his request for a bill of particulars and that the Government "either refused to provide answers or provided unsatisfactory answers to the requests . . . ." (Memorandum of Law in Support of Defendant Javir Haris' [sic] Motion for Omnibus Pre-Trial Relief dated May 11, 2005 ("Javier Mem.") at 9.)  Again, these representations, which do not specify any attempt to obtain the requested information other than the submission of a single request, do not demonstrate compliance with Local Rule 16.1.

[3] In Dames, the Court denied the defendant's request for Giglio material on the grounds that "the Government's obligation to [disclose Giglio material] arises only with the pendency of trial and knowledge of the specific testifying witnesses" and that the defendant had not demonstrated that disclosure one week before the commencement of trial "would not be 'in time for its effective use' at trial."  Dames, 380 F. Supp. at 273 (quoting United States v. Coppa, 267 F.3d 132, 144 (2d Cir. 2001)).  In the instant case, Gomez argues that disclosure of Giglio material one week before trial will not provide him with sufficient time to perform potentially necessary investigation.  Gomez states that "efforts by the government to 'clean up' its witnesses by placing them in drug rehabilitation clinic[s] or utilizing other similar methods should be disclosed [at this time] so [he] may obtain the records of those facilities."  (Memorandum of Law in Support of Luis Gomez's Pretrial Motions dated May 24, 2005 ("Gomez Mem.") at 17.)  He further claims that one week is not sufficient time within which to obtain court records pertaining to any criminal history that Government witnesses might have. (See id. at 17-18.)

-4-

any of the Defendants become aware of a specific failure on the Government's part to comply with its Brady obligations, he may renew his motion at that time.

Javier, in addition to requesting disclosure of evidence the Government intends to introduce at trial pursuant to Rule 404(b), argues that any such evidence that the Government does seek to introduce should be excluded.   Given that the Government has not yet attempted to introduce any evidence under Rule 404(b), Javier's motion is far premature and is therefore denied.

---

The Government, however, has represented that it has not yet identified with certainty the witnesses it intends to call at trial. Moreover, insofar as records related to attempts by the Government to "clean up" its witnesses and to the criminal history of Government witnesses may themselves constitute Giglio material, the Government must provide those records directly to the Defendants, thus eliminating any need for the Defendants to obtain them from any other source.   See United States v. Jacques Dessange, Inc., No. 99 CR. 1182, 2000 WL 280050, at *9 (S.D.N.Y. March 14, 2000) ("[A]s a general matter, a defendant has no constitutional right to receive either Brady or Giglio material prior to trial.   Giglio material is customarily produced in this District with Section 3500 material in recognition of the fact that this type of Brady material does not ordinarily require any independent investigation in order to use it effectively at trial.") (citing United States ex rel. Lucas v. Regan, 503 F.2d 1, 3 n.1 (2d Cir. 1974)).   To the extent that any defendant in this case finds that additional investigation is needed concerning Giglio material provided by the Government, he may seek the appropriate relief from the Court upon receipt of the material.   In addition, the Court expects the Government to take the possibility of the need for additional investigation into account in its determination of when disclosure of Giglio and other Brady material is required.   The Government has represented that it will do so.

Gomez and Minaya also request early disclosure of Giglio material as it relates to the declarants of hearsay statements that the Government intends to introduce at trial.   Again, the Government has represented that it has not yet identified what, if any, hearsay statements it intends to use at trial.   The Court finds that Giglio material related to the declarants of any hearsay statements to be used at trial should be disclosed in accordance with the same principles that govern the disclosure of such material insofar as it is related to live witnesses.

The Defendants' requests that the identity of confidential informants be disclosed are also denied. "It has consistently been held that an informant's identity need not be disclosed unless 'essential to the defense.'" United States v. Russotti, 746 F.2d 945, 949-950 (2d Cir. 1984) (quoting Scher v. United States, 305 U.S. 251, 254 (1938)). "The defendant bears the burden of establishing that such disclosure [of a government informant's identity] is 'relevant and helpful to the defense of the accused, or is essential to a fair determination' of the defendant's case." United States v. Polanco, No. 97 Cr. 106, 1997 WL 452389, at *4 (S.D.N.Y. Aug. 8, 1977) (quoting Roviaro v. United States, 353 U.S. 53, 60-61 (1957)). The Defendants have not offered any argument specific to the facts of their cases to sustain that burden.

Gomez argues that this burden does not apply in his case. He "suggests that the informant used by the government in this matter was a direct participant in the alleged criminal enterprise." (Gomez Mem. at 12.) The Second Circuit has found that a "defendant is generally able to establish a right to disclosure [of the identity of a confidential informant] 'where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence.'" United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988) (quoting United States v. Russotti, 746 F.2d 945, 950 (2d Cir. 1984)) (further citations

-6-

omitted).   Nevertheless, the Court of Appeals further stated in Saa that "it is not sufficient to show that the informant was a participant in and witness to the crime charged."   Id. Rather, if a defendant fails to show that "the testimony of the informant 'would . . . [be] of even marginal value to the defendant's case,'" the trial court is not required to order disclosure of the informant's identity.   Id. (quoting United States v. Jimenez, 789 F.2d 167, 170 (2d Cir. 1986)).   Because Gomez has not squarely claimed, let alone demonstrated, that any confidential informant in this case was also a participant in or witness to the alleged crimes, nor offered any argument as to how any informant's testimony would be of value to Gomez's defense, the Court denies his request for discovery in this regard.   See United States v. Jimenez, 824 F. Supp. 351, 365 (S.D.N.Y. 1993) ("'Mere speculation . . . that the informant may possibly be of some assistance does not overcome the strong public interest in protecting informants.'") (quoting United States v. Martinez, 634 F. Supp. 1144, 1150 (S.D.N.Y. 1986)).

With respect to the Defendants' requests for discovery pursuant to Rule 16, the record before the Court provides no basis on which to conclude that the Government is not in compliance with its obligations.   The Government has represented that it has fully complied with those obligations and will continue to do so.   Again, in the absence of any

-7-

compelling demonstration to the contrary by any of the Defendants, the Court denies their requests to compel additional Rule 16 discovery at this time.

Should any of the Defendants become aware in the future of any specific failure by the Government to comply with its disclosure obligations, and find that it is not possible to resolve the matter without the assistance of the Court after having made good faith efforts to do so as required by Local Rule 16.1, he may renew his motion to compel disclosure at that time.

2.  <u>Bills of Particulars</u>

As the Court noted in <u>Dames</u>, "[t]he decision of whether to grant a bill of particulars rests within the sound discretion of the Court. In exercising its discretion to grant a bill of particulars or not, the Court must evaluate the charges contained in the indictment and the state of discovery." <u>Dames</u>, 380 F. Supp. at 273 (citing <u>United States v. Torres</u>, 901 F.2d 205, 234 (2d Cir. 1990); <u>United States v. Panza</u>, 750 F.2d 1141, 1148 (2d Cir. 1984)).

The Second Circuit has explained that

[t]he principles governing requests for a bill of particulars are well settled. A bill is appropriate to permit a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." . . . These principles must be applied with some care when the Government charges criminal

-8-

offenses under statutes as broad as RICO.  With the wide
latitude accorded the prosecution to frame a charge that
a defendant has "conspired" to promote the affairs of an
"enterprise" through a "pattern of racketeering activity"
comes an obligation to particularize the nature of the
charge to a degree that might not be necessary in the
prosecution of crimes of more limited scope.

United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988)

(quoting United States v. Bortnovsky, 820 F.2d 572, 574 (2d

Cir.1987)).  Notwithstanding this heightened standard for RICO

cases, the Court finds that the Indictment in this action is

sufficiently particular in most respects.

Javier makes the following eight requests for additional

information:

i. the exact times dates and locations when and with
whom [sic] the defendant conspired to engage in
racketeering in furtherance of the alleged criminal
activities of the Freeman Street Robbery Organization;

ii. whether with regard to Counts One and Two the
defendant is being charged as a principal or and [sic]
aider and abetter;

iii. the names of all conspirators and aiders and
abetters not named in the indictment;

iv. any overt acts not enumerated in the indictment
concerning which acts the government intends to offer
evidence against this defendant at trial;

v. the exact date when, the place where, with whom
and in what manner the defendant initially entered into
the conspiracy and the duration of his participation;

vi. state the objects of the conspiracy and when the
defendant learned of its purposes;

vii. state what this defendant did to further the
objects of the conspiracy;

viii. whether any acts alleged or any acts or

-9-

> conversations intended to be relied upon by the
> government at trial were had at the instance of the
> government.

(Affirmation of Murray Richman dated May 11, 2005 at 6-7

("Richman Aff.").)

As to Javier's first and seventh requests, the Court

finds that the information in the fourth superseding

indictment in this case (the "Indictment") is for the most

part sufficient.  The Indictment, dated January 18, 2005, is

sixty pages long, contains twenty-two counts, and alleges

twenty-three racketeering acts.  Racketeering act seven states

that Javier and others robbed and assaulted the occupant of an

apartment in the vicinity of 1436 Beach Avenue, Bronx, New

York in or about late 1999.  Racketeering act nine alleges

that Javier and others robbed the occupants of an apartment in

the vicinity of 1426 Beach Avenue, Bronx, New York of

narcotics and narcotics proceeds in or about late 1999.

Racketeering act fourteen alleges that Javier and others

attempted to rob the occupants of an apartment in the vicinity

of 711 West 190th Street, New York, New York on or about July

13, 2000 of narcotics by following a male into the apartment

building.

Although some of the dates specified in these allegations

are less specific than others, the Court finds that the

allegations provide Javier with adequate notice of the

racketeering charges against him.  See United States v.

-10-

Lorenzano, No. S6 03 CR. 1256, 2005 WL 975980, at *3 (S.D.N.Y. April 26, 2005) (finding that a bill of particulars was not required where "[t]he Indictment charge[d] some specific and some approximate dates for all robberies charged."); United States v. Berganza, No. S(4) 03 Cr. 987, 2005 WL 372045, at *5 (S.D.N.Y. Feb. 16, 2005) (noting that the Second Circuit has "consistently sustained indictments which . . . state time and place in approximate terms.") (citing United States v. Salazar, 485 F.2d 1272, 1277 (2d Cir. 1973)).

Javier's request for more specific dates, locations and information concerning his alleged role with respect to count eleven, however, is granted in part. Count eleven charges that from in or about 1997 up to and including in or about 2001, Javier and others participated in a conspiracy to distribute and possess with intent to distribute five kilograms and more of cocaine and one kilogram and more of heroin. The Second Circuit has "consistently sustained indictments which track the language of a statute and, in addition, do little more than state time and place in approximate terms." United States v. Salazar, 485 F.2d 1272, 1277 (2d Cir. 1973). Although count eleven tracks the language of the relevant statutes and states a general time-frame, it does not contain any statements as to the place of the alleged conspiracy. In addition, racketeering act twenty-three, which appears to allege the same narcotics conspiracy

-11-

charged in count eleven, lacks any reference to a location. While the Indictment's general description of the alleged racketeering enterprise states that the Organization operated primarily in the Bronx and Manhattan, the Court concludes that the Government should provide Defendants with at least a more particular statement of the location of the alleged narcotics conspiracy.

Further, while racketeering act twenty-three and count eleven contain the same allegations as to the types and quantities of narcotics that Defendants allegedly conspired to possess and possess with intent to distribute, they specify different date ranges. Racketeering act twenty-three states that the alleged conspiracy commenced in or about 1996, while, as stated above, count eleven states that it commenced in or about 1997. Thus, the Government is directed to clarify whether racketeering act twenty-three and count eleven are intended to allege the same narcotics conspiracy and, if so, whether the conspiracy is alleged to have commenced in 1996 or 1997.

The Court finds that the narcotics conspiracy charges are otherwise adequate to inform Defendants of the nature of the accusations against them. As this Court noted in United States v. Santiago, "[i]n the context of prosecutions of narcotics conspiracies, courts have consistently refused to grant a bill of particulars requesting . . . [information

regarding] how the Government alleges the defendant performed acts in furtherance of the conspiracy." 174 F. Supp. 2d 16, 35 (S.D.N.Y. 2001) (citing <u>United States v. Feola</u>, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), and <u>United States v. Persico</u>, 621 F. Supp. 842, 868 (S.D.N.Y. 1985)). Allegations as to any defendant's particular role in the alleged narcotics conspiracy are also unnecessary given that "the Government is not required to charge any overt acts in the indictment." <u>Id.</u> (citing <u>Feola</u>, 651 F.Supp. at 1133) (internal quotation marks omitted).

With respect to count eleven, Javier also seeks a specification of "how the government arrived at an amount of 'five kilograms and more of mixtures and substances containing a detectable amount of cocaine.'" (Javier Mem. at 10-11.) Javier does not offer any explanation of how this information is pertinent to informing him of the charges against him, nor does he cite any law in support of the proposition that such information is the proper subject matter of a bill of particulars. Because the Government's method for determining the amount of cocaine that it has decided to charge Javier with possessing is not itself an element of any of the crimes charged or an aspect of any alleged conduct underlying any crimes charged, the Court denies Javier's request for this information.

As to Javier's second request, the Court finds that the

-13-

requested information -- regarding whether Javier is being charged as a principal or as an aider and abettor -- is not necessary to the adequate preparation of a defense.  <u>See</u> <u>United States v. Mannino</u>, 480 F. Supp. 1182, 1185 (S.D.N.Y. 1979) ("The Government need not specify which defendants are charged as principals and which are charged as aiders and abettors, since this would reveal the Government's theory underlying those counts of the indictment.") (citation omitted).[4]

Javier's third request, for the names of all co-conspirators and aiders and abettors, is also denied.  As explained by another court in this District,

> [i]n deciding whether a defendant's demand for the names
> of known unindicted co-conspirators [should be granted]
> . . . , courts should consider the following factors: (1)
> the number of co-conspirators; (2) the duration and
> breadth of the alleged conspiracy; (3) whether the
> Government otherwise has provided adequate notice of the
> particulars; (4) the volume of pretrial disclosure; (5)
> the potential danger to co-conspirators and the nature of
> the alleged criminal conduct; and (6) the potential harm
> to the Government's investigation. If there are a large
> number of co-conspirators and a long-running conspiracy,
> a defendant is more likely to be surprised by the
> identity of other co-conspirators, whom he may never have
> met. If the Government has failed to provide adequate
> notice of the particulars, or if the discovery has been
> voluminous, identification of known unindicted

_____

[4] The Court recognizes that similar requests have been granted by other courts in this District.  <u>See</u>, <u>e.g.</u>, <u>Feola</u>, 651 F. Supp. at 1134. As noted above, however, the decision whether or not to grant such requests is within the trial court's discretion.  Moreover, the Court is not aware of any case granting a request for information regarding whether a defendant is being charged as a principal or as an aider and abettor on the basis of reasoning that would support the granting of Javier's request for this information here.

> co-conspirators will help a defendant focus his
> investigation and prepare for trial. On the other hand,
> considering the potential danger to the co-conspirators
> and the risk of compromising continuing investigations
> allows a court to balance a defendant's need for the
> information against legitimate law enforcement concerns.

United States v. Nachamie, 91 F. Supp. 2d 565, 572-573

(S.D.N.Y. 2000).

Although the first two of these factors weigh somewhat in

favor of granting Javier's request for the names of all

alleged co-conspirators, the remaining factors weigh

conclusively against doing so. In particular, the Court is

concerned with the potential danger to unnamed co-

conspirators, given that this case involves allegations of

violent crimes including murder. In addition, Javier is at

least aware of the identities of his ten named co-defendants

and he has not claimed that the Government's discovery in this

case is so voluminous as to impede proper trial preparation.[5]

Accordingly, Javier's third request for particulars is denied.

Javier's fourth request -- for information regarding any

overt acts not enumerated in the indictment concerning which

---

[5] A court in the Eastern District of New York has observed that the
case law in the Second Circuit regarding requests for the identity of co-
conspirators "presents a curious split: There is a line of district court
cases that hold that a defendant is entitled to the names of his
coconspirators, but the appellate cases clearly hold that refusal to
direct the filing of such a bill is not an abuse of discretion." United
States v. Gotti, 784 F. Supp. 1017, 1019 (E.D.N.Y. 1992). The Court
agrees with the Gotti court that "[t]he better authority . . . mandates
that the question of granting the request . . . for a bill of particulars
on this point is entirely a matter of the sound discretion of the court."
Id.

the Government intends to offer evidence at trial -- is also denied.  As the Second Circuit noted in Davidoff, by stating that the particularity of RICO indictments must be examined with special care, it did "not mean to imply that even in a RICO case the prosecution must always disclose in advance of trial every act it will [seek to] prove that may violate some criminal statute."  Davidoff, 845 F.2d at 1154.  Again, the Court finds that the Indictment contains sufficient information regarding alleged overt acts to enable Javier to prepare his defense adequately.

As to Javier's fifth request, the Government need not provide additional information at this time concerning the time and circumstances of Javier's alleged entry into the conspiracy.  See Feola, 651 F. Supp. at 1132-33 ("Details as to how and when the conspiracy was formed, or when each participant entered it, need not be revealed before trial.") (citing United States v. Carroll, 510 F.2d 507, 509 (2d Cir. 1975)).

The Court also finds, with respect to Javier's sixth request, that the Government has sufficiently stated the objects of the alleged racketeering conspiracy and that it need not allege when the defendant learned of its purposes beyond the existing allegation that Javier participated in the conspiracy from at least in or about 1996.

Javier's eighth request, as to whether any of the alleged

-16-

overt acts wer committed at the instance of the Government, is denied. Although some courts in this District have granted similar requests, <u>see</u>, <u>e.g.</u>, <u>Feola</u>, 651 F. Supp. at 1134; <u>United States v. Lopez</u>, 26 F.R.D. 174, 175-176 (S.D.N.Y. 1960),[6] Javier has not explained, nor is it apparent, why this information is pertinent to the formulation of his defense in this case.

Finally, Javier seeks, in addition to the items specifically described in his enumerated requests, information concerning whether he is charged in count thirteen with actual or constructive possession of a firearm. Count thirteen alleges that Javier and others possessed a firearm in furtherance of a crime of violence and brandished a firearm during such a crime, specifically, the attempted robbery of 711 West 190th Street on July 13, 2000. Although Javier does not explain why this information is necessary for the adequate preparation of his defense, the Court finds that a bill of particulars specifying whether Javier is charged with actual or constructive possession of a firearm is warranted in this case. The disclosure of such information would serve the intended purpose of a bill of particulars "to permit a defendant 'to identify with sufficient particularity the nature of the charge pending against him, thereby enabling

---

[6] Neither of these cases sets forth the court's reasoning in support of its determination that the defendant's requests should be granted.

defendant to prepare for trial . . . .'" United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988) (quoting United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir.1987)).  The Government has not represented that any discovery provided thus far indicates whether Javier is charged with actual or constructive possession of a firearm in count thirteen. Accordingly, Javier's motion for a bill of particulars stating whether he is charged with actual or constructive possession of a firearm in count thirteen of the Indictment is granted.

Because Minaya is also charged with possession of a firearm in that count and has moved to join in Javier's motions, the Court also directs the Government to specify whether Minaya is charged in that count with actual or constructive possession of a firearm.  See United States v. Herrera, No. 90 CR. 184, 1990 WL 128921, at *3 (S.D.N.Y. Aug. 29, 1990) (Government voluntarily informed defendant that it intended to prove constructive rather than actual possession of narcotics after defendant requested that information in a bill of particulars.); United States v. Matias, No. 89 CR 323, 1989 WL 160222, at *5 (S.D.N.Y. Dec. 29, 1989) (Government ordered to disclose in a bill of particulars whether the defendant was charged with actual or constructive possession of cocaine and heroin); United States v. Taylor, 25 F.R.D. 225, 227 (E.D.N.Y. 1960) (Court granted request for bill of particulars specifying whether defendant was charged with

actual or constructive possession of narcotics based on the Government's consent to provide that information.).  But see United States v. Tucker, 262 F.Supp. 305, 308 (S.D.N.Y. 1966) (Request for bill of particulars characterizing charged acts as constructive or actual denied on grounds that the request sought, "[i]n effect, . . . a conclusion of law from the Government which, clearly, is not within the purpose of Rule 7(f).").[7]

Gomez requests much of the same information as Javier. He seeks the approximate date when he allegedly joined the conspiracy, the role he allegedly played, the date and place when each overt or substantive act is alleged to have taken place, and the identity of all indicted and unindicted co-conspirators, whether in this jurisdiction or elsewhere. (See Ex. A to Affirmation of Michael H. Sporn dated May 24, 2005 at 5.)  The Indictment alleges that Gomez participated in following specific racketeering acts: act seven states that Gomez robbed and assaulted the occupants of an apartment in the vicinity of 1436 Beach Avenue, Bronx, New York in late 1999; act ten alleges that Gomez on or about December 23, 1999, attempted to rob the occupants of an apartment in the vicinity of 2160 Matthews Avenue, Bronx, New York of narcotics

---

[7] In his Memorandum, Javier also argues that the Government should be required to disclose, through a bill of particulars, the identities and whereabouts of any informants who provided information leading to his arrest or indictment.  The Court denies this request for the reasons stated in section II.A.1 above.

proceeds by entering the apartment where they encountered two elderly females; act twenty alleges that Gomez attempted to rob the occupants of a building in the vicinity of 2420 Bronx Park East, Bronx, New York of narcotics by following the alleged victim, Joaquin Rodriguez, into the building, confronting him at gunpoint, demanding narcotics and shooting him to death on or about April 3, 2001.  The Court finds that these allegations are sufficiently particular to allow Gomez to prepare adequately for his defense.  Accordingly, his request for a bill of particulars is denied.

None of the other Defendants has specifically moved for a bill of particulars.  To the extent that they do so by seeking to join in the motions of Gomez and Javier, presumably therefore based on the same grounds and legal theories, the Court also finds that the allegations set forth in the Indictment and the discovery provided by the Government thus far[8] have provided them with adequate notice of the charges they face, except, as explained above, the charges contained in counts eleven and thirteen.

B.   <u>SEVERANCE</u>

The Defendants' motions for severance also lack merit.

---

[8] The Government represents that it has provided the defendants with the following materials: a search warrant affidavit containing details about the Government's investigation in this case and photographs of items seized and discovered during that search; copies of pertinent documents seized from the defendants after their arrests, including telephone books and slips of paper containing the names and telephone numbers of co-conspirators; police reports, crime scene photos and evidence vouchers pertaining to specific racketeering acts; and post-arrest statements.

As the Court recently explained in <u>United States v. Bosch</u>, "'[t]here is a preference in the federal system for joint trials of defendants who are indicted together.'   The arguments in favor of a joint trial are especially compelling where, as here, the crime charged involves a criminal conspiracy." <u>Bosch</u>, No. 04 CR. 1108, 2005 WL 1981489, at *1 (S.D.N.Y. Aug. 14, 2005) (quoting <u>Zafiro v. United States</u>, 506 U.S. 534, 537 (1993)) (further citations omitted).   "[T]he district court should grant a severance motion only if there is a serious risk that a joint trial would compromise a specific trial right of the moving defendant or prevent the jury from making a reliable judgment about guilt or innocence." <u>United States v. Rosa</u>, 11 F.3d 315, 341 (2d Cir. 1993) (citing <u>Zafiro</u>, 506 U.S. at 538-39).

Martinez and Javier, who are not themselves alleged to have committed any violent acts, contend that they will be unduly prejudiced by a trial that includes co-defendants who are charged with assault and homicide.[9]  However, "even if the Court were to grant severance, much of the evidence regarding . . . codefendants' acts of violence would be admissible in . . . [their] trial as proof of the existence and nature of the narcotics conspiracy."  <u>United States v. Santiago</u>, 174 F. Supp. 2d 16, 23 (S.D.N.Y. 2001) (quoting <u>United States v.</u>

---

[9] Martinez claims that "[i]t is believed that there shall be evidence that the victims were tortured prior to their death."  (Martinez Mem. ¶17(c).)  The Court is not aware of any such evidence at this time.

<u>Muyet</u>, 945 F. Supp. 586, 596 (S.D.N.Y. 1996)) (internal quotation marks omitted).  <u>See also</u> <u>United States v. Thai</u>, 29 F.3d 785, 812 (2d Cir. 1994) ("When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself.") (citations omitted).  In addition, unwarranted prejudice may be cured by an appropriate limiting instruction to the jury.  <u>See</u>, <u>e.g.</u> <u>United States v. Lasanta</u>, 978 F.2d 1300, 1307 (2d Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Florida v. White</u>, 526 U.S. 559 (1999).

To the extent that the Defendants' severance motions are based on the argument that a joint trial would violate their right to confront and cross-examine witnesses against them, the Court has already considered and rejected similar requests raising the same contentions.  <u>See</u> <u>Bosch</u>, 2005 WL 1981489, at *1.  Accordingly, these motions are denied for the same reasons.

Martinez argues that the death-eligibility of some defendants in this case warrants severance both because the presence of death-eligible defendants will unduly delay trial for non-death-eligible defendants and because, if the Government does elect to seek the death penalty, the jury will be death-qualified.  The Government has not yet informed the Court whether it will seek the death penalty against any of these Defendants.  The Court recognizes that, should the Government decide to seek the death penalty against any

defendant in this case, "once the case is ready for trial, counsel for the . . . defendants not subject to a possible death penalty will have to be present not only for evidence not relevant in their clients' cases, but for . . . jury selection, whose necessary length due to the presence of defendants subject to the death penalty will be extended further by the number of participating counsel." United States v. Jackson, No. 02 Cr. 756, 2003 WL 21787320, at *2 (S.D.N.Y. Aug. 4, 2003) (citation omitted). The Court is also mindful of the decisions of several other courts in this District to sever death-eligible defendants from non-capital defendants on the grounds, inter alia, that only the capital defendants were charged with murder and that the jury would be death-qualified. See, e.g., Jackson, 2003 WL 21787320; United States v. Rollack, 64 F. Supp. 2d 255 (S.D.N.Y. 1999); United States v. Maisonet, No. S3 97 CR. 0817, 1998 WL 355414 (S.D.N.Y. July 1, 1998). Nevertheless, given that the Government may still decide not to seek the death penalty against any of the defendants in this case and that trial is not scheduled to commence for almost one year, the Court declines to order severance at this time on the basis of the death-eligibility of certain defendants. Should the Government decide to seek the death penalty, any of the Defendants in this case may move or renew their motions for severance at the appropriate time.

Martinez also argues that the delay resulting from the death-eligibility of certain defendants in this case is unduly prejudicial to him because he is incarcerated and is likely to remain so throughout pre-trial proceedings. Although the Court is concerned to minimize periods of pre-trial detention, it does not find this consideration to warrant severance of Martinez's trial at this point. In any multi-defendant case in which the defendants have been denied bail, it is almost inevitable that the period of pre-trial detention will be longer than in an action involving only one defendant. In addition, the delay in this case is to some extent the result of the Court's own trial calendar, such that severance would not necessarily result in the possibility of a significantly earlier trial date. Accordingly, Martinez's pretrial detention does not support severance of his trial.[10]

Martinez further argues that his case should be severed from that of his co-defendants on the grounds that "his participation is mainly that of a look out in robberies" and that "[t]he evidence against him shall consist solely of

---

[10] Martinez does not argue that the length of his pretrial detention violates his right to due process. To the extent that this may be a concern, the appropriate "remedy would be an application for pretrial release, not a severance motion." United States v. Vega, 309 F. Supp. 2d 609, 615 (S.D.N.Y. 2004) (citing United States v. Millan, 4 F.3d 1038, 1043 (2d Cir. 1993); United States v. El-Gabrowny, No. S3 93 Cr. 181, 1994 WL 74072 (S.D.N.Y. Mar. 9, 1994); United States v. Gambino, 784 F.Supp. 129, 137-38 (S.D.N.Y. 1992)).

informant testimony." (Affirmation and Memorandum of Law in Support of Defendant's Motion for Severance dated May 10, 2005 ("Martinez Mem.") ¶ 17(a).) Serving as a lookout for robberies, however, is not clearly less culpable than performing other acts that were necessary to the success of the alleged robberies. The Government has alleged that Martinez's job during the alleged robberies was to remain outside the targeted location and "communicat[e] by cellphone or radio with the other robbers within the residence" should he detect a police presence. (Indictment at 12.) These allegations suggest an active and crucial role in relation to the alleged crimes. While Martinez is alleged to be less culpable than defendants charged with having played a leadership role in the Organization, the Court finds that there is not such a great disparity in his alleged level of culpability to warrant severance.

To the extent that the evidence against Martinez may be less reliable than the evidence against his co-defendants, insofar as it may be based solely on informant testimony, such disparity may be pointed out at trial to the jury. Martinez does not provide any compelling argument that a jury would not be able to distinguish among the different forms of evidence offered against the various defendants.

Martinez further claims that "[t]he strongest evidence linking [him] to the potential co-conspirator witnesses

against him is the alleged fact that his brother, Chavello, who was the alleged ring leader of the organization (until his murder in the late nineties) led the organization from the garage on Freeman Street where [Martinez] kept his car and at times worked in the garage." (Id. ¶ 12.)  The Indictment, however, alleges that Martinez "operate[d] the Freeman Street Garage and . . . permit[ted] the Freeman Street Robbery Organization to plan its robberies and store firearms there." (Indictment at 12-13.)  In any event, to the extent that Martinez is alleged to have been a less active participant in the Organization, the Court finds that presentation of this point to the jury is sufficient to mitigate any risk of prejudicial spillover.  Although Martinez is the only defendant to be accused of only three racketeering acts, while other defendants are charged with between four and seventeen, the Court concludes that there is not such a great disparity between the extent of his alleged involvement in the crimes charged and that of his co-defendants to warrant severance.

Martinez also argues that his trial should be severed from that of his co-defendants on the grounds that he "intends to attempt to present evidence of his not only being not guilty but that he actively interfered with the operation of the Freeman Street Organization," such that his defense may be antagonistic to that of his co-defendants. (Martinez Mem. ¶ 17(e).)  "In order to 'make a showing of mutually antagonistic

-26-

or irreconcilable defenses, the defendant must make a factual demonstration that acceptance of one party's defense would tend to preclude the acquittal of the other.'" United States v. DiPietro No. S5 02 CR. 1237, 2005 WL 783357, at *5 (S.D.N.Y. April 6, 2005) (quoting United States v. Salameh, 152 F.3d 88, 116 (2d Cir. 1998) (per curiam)) (further internal quotation marks omitted).

Martinez does not explain how his attempt to demonstrate that he interfered with the operation of the Organization would tend to preclude the acquittal of any of his co-defendants.  In the absence of a more specific factual demonstration of the extent to which Martinez's defense would be irreconcilable with his co-defendants' defenses, the Court finds that severance is not warranted.

Finally, for the same reasons that the Court finds that the preceding considerations do not warrant severance of Martinez's trial, the Court rejects Martinez's argument that all of those considerations, taken together, support separating his trial from that of his co-defendants.

Gomez makes several additional arguments in support of the contention that severance is warranted in this case. First, he contends that the Court should sever some defendants from others in order to "avoid trial management difficulties." (Gomez Mem. at 24.)  At this stage, the Court does not find that difficulties in trial management are so severe as to

warrant separate trials, particularly in light of the added burden to the Court and to witnesses and other third parties that would result from the necessity of managing two trials instead of one.  Gomez has not offered any basis from which to conclude that existing trial management difficulties are unduly prejudicial to the defendants.

Gomez also asserts that "[t]he presence of so many defendants makes it extremely difficult for jurors to give individualized attention to important distinctions between defendants and theories." (Id.)  While the Court is sensitive to this concern, and agrees that "jurors will inevitably pay less attention to the eleventh cross-examination of an accomplice witness than they will to the first," (id.), it finds that severance on this basis alone would be premature at this point.  With trial almost one year away, it is possible that the number of defendants actually going to trial will decrease before the commencement of trial.  One defendant in this case has already pled guilty.  Should any of the defendants, at a time closer to trial, wish to move or renew his motion for severance on the basis of any compelling circumstances or material new developments that could add substantially to the complexity of this case, they may do so.

Finally, Gomez argues that his trial should be severed from that of his co-defendants on the ground that he is "not named in most of the counts and most of the 'racketeering

acts.'"   (Id.)   This argument has no merit in light of the fact that Gomez, while not alleged to have participated in most of the alleged racketeering acts, is alleged to have participated in one of the most severe ones.  Specifically, he is alleged to have murdered Joaquin Rodriguez during a robbery on or about April 3, 2001 at 2420 Bronx Park East. (See Indictment ¶ 47.)  Accordingly, there is little risk that he would suffer undue prejudice as a result spillover from evidence presented regarding crimes of which he is not accused.

C.   IDENTIFICATION PROCEDURES

Minaya and Gomez have also moved to have hearings on the methods used to identify them to determine whether or not those methods were unduly suggestive.  According to the Government, Minaya's identification was based on a series of twelve photographs, each of which depicted a Hispanic male[11] and each of which was a mug shot.  Copies of these photographs have been provided to the Court.  The Government represents, and Gomez does not contest, that he was identified by more than one witness from a book of sixty photographs, each on a separate page.

---

[11] Minaya claims that "the picture subjects are not uniform in ethnicity, color" and that "the skin colors of the pictured individuals appear to be of different complexions, with some appearing substantially lighter than others." (Memorandum of Law in Support of Franklin Minaya's Pretrial Motions dated June 10, 2005 at 5-6.)  The Court's examination of the photographs used to identify Minaya, however, does not provide any basis on which to doubt the Government's assertion that they are all of individuals of Hispanic origin.

The Court denied these motions on the record at the last conference in this case on August 5, 2005.  The Court bases its denial of these motions on its reasoning set forth in Dames and Santiago.  See Dames, 380 F. Supp. 2d at 275-77; Santiago, 174 F. Supp. 2d at 30-32.

Javier has moved to suppress his identification.  He admits, however, that he is "without sufficient information to know if any unduly suggestive identification procedures may have been employed by law enforcement officers" in identifying him.  (Javier Mem. at 16.)  Rather, he bases his argument exclusively on the claim that he is innocent, such that any identification of him must have been made in error.  Because Javier does not even allege that the identification procedures used in his case were unduly suggestive, the Court is unable to grant his motion to suppress the resulting identification.

### III. ORDER

For the reasons set forth above, it is hereby

**ORDERED** that the Government specify the location of the narcotics conspiracy alleged in count eleven of the fourth superseding indictment (the "Indictment") in this action; and it is further

**ORDERED** that the Government specify whether the narcotics conspiracy charged in count eleven of the Indictment is identical with the narcotics conspiracy charged as racketeering act twenty-three under count one of the

Indictment and, if so, whether that conspiracy is alleged to have commenced in 1996 or 1997; and it is further

**ORDERED** that the Government inform defendants Franklin Minaya ("Minaya") and Haris Javier ("Javier") whether they are charged with actual or constructive possession of a firearm in count thirteen of the Indictment; and it is further

**ORDERED** that the motions of defendants Minaya, Luis Gomez ("Gomez"), Javier, and Bernabe Martinez ("Martinez") (together, the "Defendants") seeking various forms of discovery, bills of particulars, and severance are, in all other respects, DENIED without prejudice to the renewal of those motions on the basis of compelling circumstances or material new developments in this case; and it is further

**ORDERED** that Minaya's, Gomez's and Javier's motions challenging the methods used to identify them as participants in the crimes charged in this case are DENIED with prejudice; and it is further

**ORDERED** that the Defendants' motions for permission to join any and all motions made by co-defendants in this action which are applicable and are not inconsistent with their own motions, and for permission to make further motions as counsel may deem appropriate in the future are GRANTED; and it is finally

**ORDERED** that any future motions submitted by any of the

defendants in this action must comply with the requirements of Local Criminal Rule 16.1 to the extent that such procedures are applicable.


**SO ORDERED.**


Dated:      New York, New York
            12 October 2005


                                        VICTOR MARRERO
                                          U.S.D.J.